Coven, J.
In this personal injury protection (“PIP”) benefits case, we decide whether the trial court erred (1) in directing a verdict in favor of Arbella Mutual Insurance Company (“Arbella”) at the close of Physical Rehabilitation Group, Inc.’s (“PRG”) case-in-chief, and (2) in allowing Arbella’s pretrial motion in limine striking *120 reference to the patient’s accident and the treating physician’s opinion as to the proximate cause of the injuries contained in records introduced pursuant to G.L.c. 233, §79G. We conclude that the evidence at the close of PRG’s case-in-chief was sufficient; and, because a new trial must be conducted, we address the subsidiary issue relative to the medical records.
This action was brought by PRG pursuant to G.L.c. 90, §34M and G.L.c. 93A to recover unpaid PIP benefits for medical services provided by PRG to Arbella’s insured for the treatment of injuries allegedly suffered by the insured in a motor vehicle accident. PRG notified Arbella of its intent to introduce sworn medical bills and records of PRG at trial pursuant to G.L.C. 233, §79G, and filed, as required by the statute, its affidavit of notice with the trial court. On the date of trial, Arbella brought a motion in limine seeking the redaction of those portions of PRG’s records referencing the alleged accident and the treating chiropractor’s opinion on the proximate cause of Arbella’s insured’s injuries.
Arbella’s motion sought to prevent PRG from satisfying its burden of proving that an accident had occurred.[1] During PRG’s objection to the motion, the court inquired whether PRG was “introducing [the objected to portions of the PRG Confidential Patient Information question sheet completed by Arbella’s insured and then under consideration] for the purpose of establishing that there was an accident.” PRG responded that the material was being offered “for all purposes,” including to establish that an accident had occurred. Thereafter, the judge struck from the information sheet the portions that asked whether the insured’s symptoms were the result of an accident and the affirmative response; the date and type of accident, to which a date was given and the term “auto” was circled; the position of the insured in the motor vehicle, to which “driver” was checked; and whether the vehicle was stopped or moving, to which “moving” was marked and 25 miles per hour was inserted. Consistent with this approach, the court allowed the redaction of other parts of the §79G package, including portions of four reports[2] of the treating chiropractor. Redacted from those reports were references to “accident,” the date of injury, that the injuries “occurred secondary to a motor vehicle accident,” that the type of case was an “MYA,” that the injuries were “deemed to be causally related to the accident of June 14,2003,” and, from the chiropractor’s initial report assessment, that the insured’s “ongoing symptoms and complaints were causally related to the [motor vehicle] accident” occurring on the date alleged by the insured. Also redacted from the initial report was a substantial portion of the case history section, including a description of how the accident occurred, PRG’s patient’s position in the vehicle (i.e., restrained behind the driver’s wheel), and the facts that airbags deployed in the accident and PRG’s client “was thrust backwards in the therapy seat of’ the motor vehicle as a result *121 of the accident.[3] Left unredacted was the chiropractor’s attached affidavit to the §79G package stating that “[a] 11 of the treatment [reflected in the package] was necessary and causally related to [Arbella’s insured’s] accident of 6/14/2003.”
The case proceeded to trial. Relevant to the issues before us, the following evidence was introduced through interrogatories and the testimony of Arbella’s senior special investigator. Arbella provided PIP benefits covering its insured under a policy in effect on the date of the alleged accident, June 14,2003. It received a PIP application from its insured on October 29,2003, placing it on notice that its insured was claiming injuries as a result of the alleged accident. In addition, it received an operator’s report from its insured that also placed it on notice of the June, 2003 accident. Further, there was evidence that Arbella received medical bills from PRG relating to its insured’s claim, and that it made $225.00 in payment towards those bills, which Arbella pays “in good faith if someone’s been injured in a car accident.” Arbella’s senior special investigator also provided evidence that Arbella did not choose, as was its statutory right, to have its insured evaluated by an independent medical examiner; nor did Arbella choose to have PRG’s bills reviewed by another chiropractor. There was also evidence that Arbella paid its insured a total loss value for the vehicle alleged to have been involved in the accident. Finally, the §79G package was introduced. As noted, left unredacted from that package was the chiropractor’s attached affidavit stating that “ [a]ll of the treatment [reflected in the package] was necessary and causally related to [Arbella’s insured’s] accident of 6/14/2003.” PRG rested after the presentation of this evidence, and Arbella moved for a directed verdict claiming the lack of evidence of the occurrence of an accident.
In reviewing the allowance of a Mass. R. Civ. R, Rule 50 (a) motion for directed verdict, we “tak[e] into account all the evidence in its aspect most favorable to the plaintiff... to determine whether, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the jury reasonably could return a verdict for the plaintiff.” Phelan v. May Dep’t Stores Co., 443 Mass. 52, 55 (2004), quoting Rubel v. Hayden, Harding & Buchanan, Inc., 15 Mass. App. Ct. 252, 254 (1983).
On the evidence presented, a reasonable jury could have returned a verdict for the plaintiff. PRG established that (1) on June 14,2003, a motor vehicle policy that it issued and that provided for PIP benefits was in existence and covered its insured, PRG’s patient; (2) Arbella received bills from PRG for services rendered to its insured; (3) Arbella paid only $225.00 of the charges; (4) the treatment was causally related to a June 14, 2003 accident; (5) inferentially, from limited payment of the *122 treatment bills[4] and the total loss value payment, that an accident did occur on June 14, 2003 that involved the vehicle of Arbella’s insured and that the insured was injured in the accident; and (6) Arbella had no defense to nonpayment because the necessity of PRG’s treatment and the reasonableness of the amount of its bills were not disputed.
Before we address the issue of the G.L.c. 233, §79G reports, we first define what is, and is not, at issue. This is a claim for PIP benefits. Payments of this type of benefit are made without regard to fault; and, as used in this context, the term “accident” imports no notion of fault. Additionally, the issue we address does not relieve the plaintiff from its burden of proving that its client was involved in a motor vehicle accident when occupying a motor vehicle insured by Arbella. The limited issue we address is whether references to a motor vehicle accident in the chiropractor’s reports are admissible pursuant to §79G solely to establish that the condition diagnosed arose out of a motor vehicle accident (and not to establish that the injured party was occupying a motor vehicle insured by Arbella). We conclude that they are admissible and it was an error of law to exclude those references.[5]
General Laws c. 233, § 79G provides, in pertinent part:
In any proceeding commenced in any court ..., an itemized bill and reports, including hospital medical records, [6] relating to medical... services ... rendered to or prescribed for a person injured, or any report of any examination of said injured person, including, but not limited to hospital medical records subscribed and sworn to under the penalties of perjury by the physician... rendering such services... shall be admissible as evidence *123 of the fair and reasonable charge for such services or the necessity of such services or treatments, the diagnosis of said physician ..., the prognosis of such physician..the opinion of such physician as to proximate cause of the condition so diagnosed... (emphasis added).
In Ortiz v. Stein, 31 Mass. App. Ct. 643 (1991), the Appeals Court described the purpose of the statute, and its 1988 amendment, as follows:
Prior to its amendment in 1988, §79G applied to proof of medical and hospital bills but not to reports, and constituted a straightforward statutory exception to the hearsay rule. Central to its purpose was the avoidance of generally perfunctory and time-wasting court appearances by ‘persons from whom [a plaintiff] had received medical treatment.’ The 1988 amendment essentially extended the economies of proof by sworn document to other statements commonly included in the records of a treating or examining physician and relating to diagnosis, prognosis, and the cause and disabling effect of a patient’s condition. Implicit in that extension is the recognition that the economies of proving medical bills without witnesses in personal injury cases frequently are nullified by pragmatic trial considerations requiring that the billing physician be called to testify to or from his recorded observations and opinions which often are as uncontroverted as the medical bills” (citations omitted).
Id. at 645.
On the basis of the plain language of the statute and its purpose, it was error to redact from the chiropractor’s reports his opinion that injuries for which Arbella’s insured sought treatment from PRG “occurred secondary to a motor vehicle accident,” that the injuries were “deemed to be causally related to the accident of June 14, 2003,” and that the insured’s “ongoing symptoms and complaints were causally related to the [motor vehicle] accident” occurring on the date alleged by the insured. These constituted, in terms of the statute, “the opinion of such physician... as to proximate cause of the condition so diagnosed,” and were admissible.[7]
The date of the accident, the position of the insured, the description of what the vehicle impacted, and what happened to the insured’s body during the accident, all contained in the chiropractor’s reports, were also admissible. They all entered into the chiropractor’s ultimate opinion as to whether the injuries presented to the chiropractor were the proximate result of the patient’s disclosures.
The remaining issue is whether the disclosures are, as argued by Arbella, to be limited to the opinion of proximate cause, or whether they can be admitted substantively to establish that a motor vehicle accident occurred.
We disagree with Arbella’s assertion that to allow substantive use “would have a ... conclusive evidentiary effect” on PRG’s burden to prove, as an element of its claim, that an accident occurred. The statements are evidence, but they would not have conclusive effect. The references may establish the necessary element of prov *124 ing a motor vehicle accident, but, as with other evidence, they merely serve to meet PRG’s burden of production. This limited evidentiary use follows from the statute itself. The introduction of the chiropractor’s report containing these references does not “limit the right of’ Arbella “to summon... [a] person to testify in respect to such ... report.” G.L.c. 233, §79G. Their only effect is to allow PRG to meet its obligation to establish a prima facie case; and their ultimate use is by the fact finder in deciding whether PRG has met its burden of persuasion on a question of fact.
We also disagree with Arbella that to allow the introduction of the evidence would create an opportunity for PRG, in future cases, to satisfy its burden by including in its report, as suggested by Arbella, the statement of a client, “I was in a car accident The car that hit me has a Massachusetts license plate. It was insured by Arbella.” We go only as far as holding that the statements included in a §79G report for the purposes of diagnosis and treatment can be substantively used to establish that a motor vehicle accident occurred.
On an evidentiary level, we see no reason to allow such statements to be used by a chiropractor substantively to determine a proximate cause of the injuries or condition observed, to which Arbella agrees that they can be used, and, at the same time, prohibit the use of the statements substantively beyond clinical use. Substantive use of such statements is recognized in the context of medical records and their admissibility. See Bouchie v. Murray, 376 Mass. 524, 527-528 (1978); G.L.c. 233, §79; Mass. G. Evid. §803(4), 252-253 (2012). To restrict their use to clinical issues would, in essence, neutralize the evidentiary effect of the §79G report. Restricted use of the report of a physician who observes the injuries or condition of a patient and forms an “opinion... as to proximate cause of the condition so diagnosed” that is consistent with the statements of the patient would effectively impeach what has been deemed reliable and that has been corroborated. We do not find such intent in the statute.
Judgment for the defendant is vacated, and the case is returned to the Lowell District Court for a new trial on all complaint counts.
So ordered.

 Arbella, in answer to PRG’s complaint, asserted thirty-six defenses. None specifically raised as a defense the nonoccurence of its insured’s involvement in an accident.

 The reports were labeled Initial Report, Extended Follow-Up Examination, ReExamination and for Rehabilitative Exercise, and Final Report/Discharge Summary.

 The redacted portion states: “On 06/14/03, [the insured] was the restrained driver of a minivan that was proceeding through a green light in a traffic intersection when she had to slow suddenly for another vehicle entering the intersection from the left and that had run through a red light, when her vehicle was struck from behind by a large-sized pickup truck. This caused [the insured] to lose control of her vehicle, subsequently veering left into a tree. Her vehicle was considered a total loss. [The insured] relates that the airbags released at the time of impact and she was thrust backward in the seat of her car. She relates no loss of consciousness, however, was quite stunned by the incident.”

 Perhaps it could be inferred from the testimony that Arbella paid $225.00 of the treatment bills in “good faith,” and that it opted subsequently not to make further payment on the ground that it disputed that its insured was in the alleged accident. But, the standard to be applied here requires more than this limited view of the evidence.

 Arbella suggests that we apply an abuse of discretion standard. On the facts of the case, we decline to examine the issue under that standard. It is clear from the record that the trial judge excluded the references in the belief that references, in and of themselves, could not be used to establish the occurrence of an accident. The decision to exclude was not based on discretion. Rather, it was based on the trial judge’s belief as to what was required as a matter of law. Therefore, an abuse of discretion standard of review is inapplicable.

 Because we conclude that it was error to exclude the references in the chiropractor’s reports, and the parties have not briefed the issue of whether the Confidential Patient Information question sheet completed by Arbella’s insured qualifies as a “hospital medical record” under G.L.c. 233, §79G, we do not address the admissibility of that document. Section 79G defines “ [t]he word ‘hospital’ [to] mean any hospital required to keep records under” G.L.c. Ill, §70. Section 70 deals with “ [hospitals and clinics subject to licensure by the department of public health.” A chiropractic facility receives its license from the board of registration of chiropractors. See G.L.c. 112, §94A(b).

 Pursuant to the statute, the term “physician” includes chiropractors.